# KIMBALL vs. GREIG.

[BILL IN EQUITY BY SURETY AGAINST PRINCIPAL, TO SUBJECT LANDS TO THE PAYMENT OF DEBT.]

1. *Surrender, or re-delivery of deed, by grantee to grantor.*—The mere surrender, or re-delivery of a deed, by the grantee to the grantor, does not work a divestiture of the title out of the grantee ; nor can a trustee, having accepted a conveyance on a secret trust, repudiate the trust, and divest himself of the title conveyed to him, by surrendering the deed to the grantor, and declaring "that he will not have any thing more to do with the matter."

2. *Parties to bill to subject lands to payment of debt.*—To a bill which is filed by a surety against his principal, and which seeks to subject to the payment of the debt lands alleged to have been conveyed by the principal in secret trust, the holder of the legal title to the lands is a necessary party.

3. *Dismissal of bill without prejudice.*—When a bill is dismissed without prejudice, but neither the decree nor the opinion shows the reason of such dismissal, although the record shows that it was defective for the want of necessary parties defendant, the appellate court will presume that the complainant was allowed an opportunity to amend by adding the proper parties, and that he declined to do so.

4. *Equitable relief on grounds of fraud, discovery, and account.*—Where a surety files a bill against his principal, seeking to subject lands which are alleged to have been conveyed by the principal, in secret trust, to hinder and delay the collection of the complainant's demand, and to have been afterwards secretly released or re-conveyed by the trustee ; and the an wer, while admitting the conveyance and re-conveyance of the lands, denies all fraudulent intent, and alleges that the only purpose was to secure the lands as a homestead exempt from execution ; all the parties being competent witnesses at law, and there being no complicated accounts to be settled,—the bill is properly dismi sed on the merits ; nor can it be maintained for the purpose of ascertaining the value of the homestead exemption, and subjecting the residue of the lands to the satisfaction of the complainant's demand.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. ADAM C. FELDER.

GEO. N. STEWART, for appellant.—The equity of the bill rests on the three grounds of fraud, discovery, and account. The fraud consists in the conveyance to King, which recites

Kimball v. Greig.

the payment of a valuable consideration, when in fact none whatever existed, and the intention was to hinder and delay the plaintiff in the collection of his demand, and the secret re-conveyance by King to the defendant. These conveyances constitute such a cloud on the title as justified an appeal to the chancery court for its removal; and as to these matters a discovery is also sought from the defendant. An account is also necessary, to ascertain the amount of the debt which the plaintiff has paid, and the amount of the rent with which he is chargeable.

The master's report shows that the house and lot were of value sufficient, over and above the highest exemption claimed, to satisfy the plaintiff's demand; and a resort to chancery was necessary to reach and subject this surplus. When this obligation was contracted, (October 22, 1866,) the law exempted only $500 worth of real estate. The law exempting $1200 worth of real estate, (Rev. Code, § 2884,) was passed on the 19th February, 1867; and the provision in the constitution of 1867 is made expressly applicable to future contracts. But, in point of fact, the house and lot were not exempt at all, not being occupied by the family. *Kaster v. McWilliams*, 41 Ala. Rep. 302; *Allman v. Gann*, 29 Ala. 240.

Thos. H. Herndon, and R. Inge Smith, *contra.*—1. The deed from Mrs. Greig to King conveyed the legal title to him, and its subsequent surrender by him did not divest his title.—36 Ala. 586; 33 Ala. 264; 15 Ala. 619; 6 Ala. 801; 7 Peters, 171; 22 Howard, 1; 4 McLean, 12; 1 Black, 451; 12 Johns.

2. As the holder of the legal title, King was a necessary party to the bill.—21 Ala. 264.

3. The court had the right to dismiss the bill without prejudice, as the plaintiff did not offer to amend by bringing in King.—23 Ala. 232; 16 Ala. 625; 8 Porter, 270.

PETERS, J.—The bill in this case was filed by Kimball, the appellant, against Mrs. Greig, the appellee, for the purpose of subjecting certain real property owned by

her, in the city of Mobile, in this State, to the payment of complainant's debt to one Henry, which debt he had incurred as the surety for Mrs. Greig, on certain promissory notes, dated October 23, 1866, which are set out in full in the pleadings. The ground of equity on which the case mainly, and, so far as I have been able to comprehend it, wholly rests, is the allegation that Mrs. Greig was the owner in her own right of a certain house and lot in said city of Mobile, which she had fraudulently conveyed to one King, for the purpose of hindering and delaying the collection of complainant's demand, but, before the filing of the bill, King, "by some instrument secretly executed, released to Mrs. Greig all claim to said lot." It is also alleged that Mrs. Greig intended to convey her property to prevent its being subject to satisfaction of the complainant's demands. It also appears that there was an account between the parties, but it does not seem to be at all complicated. King is not made a party to the suit. Mrs. Greig was the sole defendant, and was required to answer the bill upon oath. Accordingly, Mrs. Greig answered the allegations of the bill, on oath, and admitted her indebtedness as charged, and her inability to pay it. She also admitted her conveyance to King, and his subsequent relinquishment of his title to her, and asserted her right to the lot as a homestead for herself and child. She also denied that the conveyance to King had been made to defeat, or hinder or delay the complainant in the collection of his demand, but only to secure the house and lot to herself and child as a homestead. And she asserted, by way of explanation of the conveyance to King, and by way of plea, that the said house and lot, as her homestead, was not liable to levy and sale under any legal process, for the satisfaction of complainant's said demand.

On the coming in of the answer, it was referred to the master to ascertain the amount of complainant's debt, the value of the lot at the date of the filing of the bill, and whether King had re-conveyed his title to Mrs. Greig. The master ascertained the amount of the debt to be $730 43, and the value of the lot to be $2,700 ; and that

King "had returned to Mrs. Greig the deed made by her to him for said lot, and at the same time stated that he relinquished any and all claim thereto which he might have obtained by said deed, and that he would have nothing further to do with the matter." This he reported to the court, and the report was confirmed. The cause was then submitted for a final decree, upon the bill, answer, and master's report. There was no testimony taken in the case. Upon the final hearing, the learned chancellor dismissed the bill, and taxed the complainant with the costs. From this decree he appeals to this court.

1-2. The decree does not show upon what grounds the bill was dismissed, whether for the want of proper parties defendant, or for want of proof to sustain the allegations, or the insufficiency of the allegations to make out a case in equity. It may have been done for any of these reasons, but there is no means of ascertaining, from the record, which reason prevailed in the judgment of the learned chancellor to influence his decision. Upon the facts reported by the master, King was a necessary party defendant to the bill. All the title that Mrs. Greig could convey, passed to him by her deed to him, and the mere re-delivery, or surrender of the deed to her, did not divest his title. She does not admit that her conveyance to King was intended as a fraud, but only to secure in his hands real estate, which she was advised she could so convey, to be held for her as her homestead, for her use as the head of a family. If King accepted the conveyance for this purpose, he could not repudiate the trust by a mere return of the deed to her and declaring his unwillingness "to have anything more to do with the matter," as he says he did. The title to the land was in him, and the chancellor could not deal with the land, under such a state of facts, without his presence in court. Lands in this State·can only pass by descent, or by purchase ; which latter is by will, or by bargain and sale, or some other mode of conveyance by instrument in writing. And for this reason King could only reinstate Mrs. Greig in her title by [re-conveyance or by

will.—Revised Code, §§ 1554, 1535; Ib. §§ 1910, 1930; Ib. § 1588; 4 Kent, p. 441, marg.; *King v. Crocheron,* 14 Ala. 822, 828; *Gimon v. Davis,* 36 Ala. 589; *Bryant v. Young, Hale et al.,* 21 Ala. 264.

3. The bill was dismissed without prejudice. But it does not appear from the record that this objection was made in the court below, or that the complainant moved to amend his bill and was refused. To sustain the judgment, it will be presumed here that he refused to amend upon a discovery of the defect. Such has long been the practice of this court.—*Singleton v. Gayle,* 8 Porter, 270; S. C., 5 Smith's Cond. Rep. 275; *Goodman, Ex'r, v. Benham, Adm'r,* 16 Ala. 625, 631; *Andrews et al. v. Hobson's Adm'r,* 23 Ala. 219, 232; 43 Ala. 542, 555, 57. In this view of the case, the dismissal was not erroneous.

4. But the learned chancellor may have proceeded to dispose of the bill upon its merits. The only allegation in the pleadings, which would afford any pretense for a resort to the extraordinary powers of a court of chancery, is that setting up the fraud in the conveyance to King. But the bill shows that King re-conveyed, or released, "by instrument secretly executed, all his claim to said lot to Mrs. Greig" before the suit was commenced; and her answer admits this, in effect, and asserts that she had been restored to her original right and title to the lot. And she denies that she was making, or intended making, any attempt to convey away her property to defeat the collection of the complainant's demand, as charged in the bill. Then, her title was not embarrassed by the supposed fraudulent deed to King, and there was no need for any discovery that could not be made upon a trial at law; as she and King and the complainant were all competent witnesses, and could be fully examined in a court of law.—Revised Code, §§ 2704, 2731. Then, as the case was submitted, there was really no fraud, and no serious complication of accounts, and no necessity of any discovery which could not very well be made at law. The allegations of the bill material to the jurisdiction of the chancellor were not sus-

tained. And upon this ground, also, the cause was properly dismissed.

The bill is not so framed as to entitle the complainant to go into chancery to ascertain the value of the homestead interest in the land, so that he might subject the residue, if any, to the satisfaction of his claim, even if this could be done, where the interest is merely a legal interest, as in this case, which would be accessible to an execution at law. Revised Code, § 2880, cl. 4, § 2884; Ib. § 2871.

This disposes of all the questions that can legitimately arise in this case, as it is presented to this court. Any discussion of the very important question of the right of the family to a homestead would be but an expression of my own individual opinion, which, until the question can be authoritatively settled, might only increase the confusion already existing upon that subject. But I may be permitted to intimate that I am prepared to hold, that the right of the family to a homestead is paramount and fundamental, and that it is the duty of the State to secure it and to protect it, in preference to the payment of debts, by such limitations as a just and wise policy may dictate. It is purely a domestic affair, wholly within the control of the modified sovereignty of the State. That the State has the power to make some exemptions from sale under legal process, is beyond all doubt. This is admitted by Chief Justice TANEY, in the case of *Bronson v. Kinzie*, 1 How. 311, 315. It has never been seriously denied in this State. Const. Ala. 1867, Art. XIV, Pamph. Acts, 1870–71, p. 28; Rev. Code, p. 565; Code of Ala. p. 453; Clay's Digest, p. 210; Aikin's Digest, p. 164; Toulmin's Digest, p. 317; *Webb v. Edwards*, 46 Ala. 17; 4 Kent, 438, marg. And if the power exists, I have been unable to comprehend what clause of the national constitution was intended to limit it beyond the mere discretion of the State.—*Hardeman v. Downer*, 39 Ga. 425.

Let the judgment of the court below be affirmed, at appellant's costs, in this court and the court below.